UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LANA LORRAINE IMM,

      Plaintiff,                  Case No. 2:20-cv-11943

                                     District Judge Robert H. Cleland

v.                             Magistrate Judge Kimberly G. Altman

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

_____/

## **REPORT AND RECOMMENDTION ON CROSS MOTIONS FOR SUMMARY JUDGMENT**

### I.     Introduction

     This is a Social Security case.  Plaintiff Lana Lorraine Imm ("Imm") brings this action under 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under the Social Security Act ("the Act"). Both parties have filed summary judgment motions (ECF Nos. 10, 13), which

1

have been referred to the undersigned for a Report and Recommendation under 28

U.S.C. § 636(b)(1)(B).

For the reasons set forth below, it is RECOMMENDED that the

Commissioner's for Summary Judgment (ECF No. 13) be GRANTED and that

Imm's Motion for Summary Judgment (ECF No. 10) be DENIED.

## II.     Background
### A.     Procedural History

Imm was 43 years old at the time of the February 14, 2018 alleged onset

date.  (ECF No. 8, PageID.192).  She worked previously as a banker; clubhouse

director at a mental health rehabilitation facility; event and programs specialist at

a health center; owner of a personal chef and home care service; and program

director of a mental health rehabilitation facility.  (*Id*., PageID.211).  She alleges

disability due to trigeminal neuralgia, [1] chronic pain, depression, generalized

anxiety disorder, and anemia.  (*Id*., PageID.175).

---

[1] "Trigeminal neuralgia is a chronic pain condition" affecting the trigeminal nerve which carries sensation from the face to the brain.  https://www.mayoclinic. org/diseases-conditions/trigeminal-neuralgia/symptoms-causes/syc-20353344 (last visited December 17, 2021).  Symptoms may include shooting pain triggered by touching the face, chewing, or speaking; series of attacks lasting for up to months; chronic aching; pain radiating to the cheek, jaw, teeth, gums, lips, eye, or forehead; and pain on one side of the face with symptoms worsening over time. *Id.*  The same website states that "[b]ecause of the variety of treatment options available, having trigeminal neuralgia doesn't necessarily mean you're doomed to a life of pain. Doctors usually can effectively manage trigeminal neuralgia with medications, injections or surgery."  *Id.*

After Imm's DIB application was denied at the initial level on May 22, 2018, she timely requested an administrative hearing, held March 22, 2019 before Administrative Law Judge ("ALJ") Jennifer Overstreet (*Id*., PageID.68). (*Id*., PageID.118). Imm, represented by Carl Bender, testified, as did a Vocational Expert ("VE"). (*Id*., PageID.72-89, 89-94).

Imm offered the following testimony at the hearing:

She was married and lived with her husband, adult daughter, son-in-law, and eight-year-old daughter. (*Id*., PageID. 74). She held a bachelor's degree. (*Id.*). She was able to drive when not limited by pain. (*Id.*). Her former work as the director of a clubhouse in a facility for mental illness included hiring and firing subordinate employees. (*Id.,* PageID.77-78). The condition of trigeminal neuralgia caused daily ear and tooth pain. (*Id*., PageID.81). Medication reduced her pain to a level "five" on a scale of one to ten. (*Id*., PageID.81). Medication side effects included dizziness, fatigue, muscle pain, memory loss, confusion, nausea, problems concentrating, and shaking. (*Id*., PageID.82). She was examined by a neurologist at six-month intervals. (*Id*., PageID. 83). Her condition was exacerbated by changes in weather and exposure to light. (*Id*.). The trigeminal neuralgia affected her right side. (*Id*., PageID. 84).

In addition to trigeminal neuralgia, she experienced occipital neuralgia which caused left-sided head pain. (*Id*., PageID.84).

In response to questioning by her attorney, Imm reported up to level "nine" pain on a "bad" day. (*Id*., PageID.85). On a good day, she was able to focus for 15 minutes at a time but on a bad day was unable to focus or get out of bed. (*Id*., PageID. 85-86). She experienced five bad days each week. (*Id*., PageID.86). Her pain levels were affected by stress and anxiety. (*Id*.). She received psychological counseling for stress and anxiety and took Lexapro and Wellbutrin for the conditions. (*Id*.). Due to her conditions, she was no longer able to attend church regularly, teach church classes, or interact significantly with family and friends. (*Id*., PageID. 87). She continued to perform household chores on a sporadic basis and to prepare meals. (*Id*., PageID.89).

On June 10, 2019, the ALJ determined that Imm was not disabled. (*Id*., PageID.50-60). On May 18, 2020, the Appeals Council denied review of the ALJ's findings, making the ALJ's decision the final decision of the Commissioner. (*Id*., PageID.1-3). Imm timely filed for judicial review of the final decision on July 18, 2020.

### B.    Medical Evidence

In January 2018, Imm reported stabbing right ear and jaw pain along with numbness and tingling on the left side of her head. (*Id*., PageID.277).

Neurologist Amanda Rabquer, M.D. noted a diagnosis of trigeminal neuralgia of the right side of face. (*Id.*). Imm reported cognitive slowness from an earlier prescription for Carbamazepine.[2] (*Id.*, PageID.278). She was prescribed Prednisone. (*Id.*, PageID. 279). She demonstrated 5/5 strength in all extremities. (*Id.*, PageID.334). An MRI from later the same month showed unremarkable trigeminal nerves and otherwise essentially normal findings. (*Id.*, PageID.283-284).

Imm also attended mental health counseling sessions at Masterpeace Center Counseling and Development. (*Id.*, PageID.287). Counseling records by Emily Burlen, LMSW from March 2018, note Imm's report of "multiple stressors" including symptoms of trigeminal neuralgia, the recent death of her father, and her need to care for her disabled brother. (*Id.*). The symptoms of depression included insomnia, low energy, lack of motivation, and crying jags. (*Id.*, PageID.288). She reported crocheting to relieve anxiety. (*Id.*). Records by Dr. Rabquer from the same month note "severely bothersome" right-sided face pain. (*Id.*, PageID. 271). Dr. Rabquer noted that currently prescribed pain medication could cause drowsiness. (*Id.*).

---

[2] Among other uses, Carbamazepine is used to relive pain due to trigeminal neuralgia. https://www.mayoclinic.org/drugs-supplements/carbamazepine-oral-route/description/drg-20062739 (Last visited December 27, 2021).

April 2018 counseling records note Imm's report of severe pain.  (*Id*., PageID. 290).  Imm reported that a yoga class was helpful.  (*Id.*).  Dr. Rabquer's records from the same month note extreme stabbing pain behind the right ear occurring multiple times daily.  (*Id*., PageID.310).  Counseling records from June 2018, note continued family stressors.  (*Id*., PageID.471).

On April 19, 2018, Dr. Rabquer composed a letter on behalf of Imm's disability claim, describing Imm's report of trigeminal neuralgia symptoms.  (*Id*., PageID.429).  Dr. Rabquer stated that Imm "has not been able to work because of the symptoms as she reported she would be off [task] 30-40 percent of the time. This is because she is easily distracted by her pain, thoughts, and others."  (*Id*.). Dr. Rabquer's June 2018 records state that Imm was not interested in nerve blocks and would use "heat or ice as needed."  (*Id*., PageID.502).  In August 2018, Dr. Rabquer assessed Imm with occipital neuralgia of the left side and intractable migraine with aura.[3]  (*Id*., PageID.496).  Imm reported that she was "managing better" on her current medication regime.  (*Id*., PageID.497).

---

[3] The American Association of Neurological Surgeons ("AANS") defines occipital neuralgia as "a condition in which the occipital nerves . . . are injured or inflamed. This causes headaches that feel like severe piercing, throbbing or shock-like pain in the upper neck, back of the head or behind the ears." https://www.aans.org/en/Patients/Neurosurgical-Conditions-and Treatments /Occipital-Neuralgia. (Last visited December 27, 2021).  Non-surgical treatment includes heat, physical therapy, massage therapy, anti-inflammatory medications,

In October 2018, Dr. Rabquer noted Imm's report that her symptoms were "manageable on her current regimen of Gabapentin, Lamotrigine, Tramadol, and Tizanidine." (*Id*., PageID.489). Dr. Rabquer noted that Imm had declined occipital nerve blocks. (*Id*.). She further noted that a recent MRI of the brain was consistent with January 2018 results. (*Id*., PageID.490). Imm declined to consider neurosurgical intervention. (*Id*.). Imm appeared alert and fully oriented with full muscle strength. (*Id.*, PageID.491). In November 2018, Imm reported that she exercised by walking three to four times each week. (*Id.*, PageID.457). Imm described her exercise as "moderate." (*Id*., PageID.461). She denied headaches, depression, anxiety, or insomnia. (*Id*., PageID.457-458).

In March 2019, Dr. Rabquer composed a second letter on behalf of Imm's disability claim, noting Imm's report of ear, jaw, and tooth pain due to trigeminal neuralgia and occipital neuralgia. (*Id*., PageID.580). Dr. Rabquer noted the medication side effects of lightheadedness, dizziness, confusion, poor concentration, swelling, skin rash, frequent infections, fatigue, weakness, sleep disturbance, anxiety, depression, jerky movements, decreased coordination, difficulty word finding, and tremors. (*Id*.). She again concluded that Imm "has

---

muscle relaxants, anticonvulsant medications, nerve blocks, and botox injections. *Id.*

not been able to work because of the symptoms as she reported she would be off

[task] 40-50 percent of the time.  This is because she is easily distracted by her

pain." (*Id.*).

> III.    Framework for Disability Determinations (the Five Steps)

Under the Act, DIB and SSI are available only for those who have a

"disability."  *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  The Act

defines "disability" as the "inability to engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which

can be expected to result in death or which has lasted or can be expected to last for

a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The

Commissioner's regulations provide that a disability is to be determined through

the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful
> activity, benefits are denied without further analysis.

> Step Two: If the claimant does not have a severe impairment or
> combination of impairments that "significantly limits . . . physical or
> mental ability to do basic work activities," benefits are denied without
> further analysis.

> Step Three: If the claimant is not performing substantial gainful
> activity, has a severe impairment that is expected to last for at least
> twelve months, and the severe impairment meets or equals one of the
> impairments listed in the regulations, the claimant is conclusively

presumed to be disabled regardless of age, education, or work experience.

Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, No. 08-10279, 2008 WL 4793424, at *4 (E.D. Mich. Oct. 31, 2008), citing 20 C.F.R. § 416.920; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001); 20 C.F.R. § 404.1520.  "The burden of proof is on the claimant throughout the first four steps. . . .  If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [Commissioner]."  *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Following this five-step sequential analysis, the ALJ found that Imm was not disabled under the Act.  At Step One, the ALJ found that Imm had not engaged in substantial gainful activity since the alleged onset date of February 14, 2018 thorough her date last insured for DIB of December 31, 2018.  (ECF No. 8, PageID.52).  At Step Two, the ALJ found that she had the severe impairments of "trigeminal neuralgia, migraines, occipital neuralgia, and depression."  (*Id.*).  At

Step Three, the ALJ found that Imm's impairments, whether considered alone or in combination did not meet or medically equal a listed impairment.  (*Id.*, PageID.53).

The ALJ then assessed Imm's residual functional capacity ("RFC"), concluding that she was capable of performing light work with the following additional limitations:

> [She] must avoid concentrated exposure to extreme heat and/or cold, and should avoid working in the conditions of vibrations.  The claimant should avoid workplace hazards such as unprotected heights and moving mechanical parts.  She is limited to simple tasks in a routine work setting, but not at a production rate pace, for example, no assembly line work.

(*Id.*, PageID.55).

At Step Four, the ALJ found that as of the date last insured, Imm was unable to perform any past relevant work.  (*Id.*, PageID.58).  Citing the VE's testimony, the ALJ found at Step Five that Imm could perform the light, unskilled jobs of checker (50,000 jobs in the national economy), routing clerk (43,000), and mail sorter (55,000).  (*Id.*, PageID.59).  As a result, the ALJ concluded that Imm was not disabled under the Act.  (*Id.*, PageID.59-60).

## IV.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision under 42 U.S.C. § 405(g).  Although the court can examine portions of the record that were not evaluated by the ALJ, *Walker v. Sec.*

*of Health & Hum. Servs.*, 884 F.2d 241, 245 (6th Cir. 1989), its role is a limited one.  Judicial review is constrained to deciding whether the ALJ applied the proper legal standards in making his or her decision, and whether the record contains substantial evidence supporting that decision.  *Tucker v. Comm'r of Soc. Sec.*, 775 F. App'x 220, 224–25 (6th Cir. 2019)); *see also Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007) (noting that courts should not retry the case, resolve conflicts of evidence, or make credibility determinations); *Biestek v. Comm'r of Soc. Sec.*, 880 F.3d 778, 783 (6th Cir. 2017)(same).

An ALJ's factual findings must be supported by "substantial evidence." 42 U.S.C. § 405(g).  The Supreme Court has recently explained what that term means:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations.  And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high.  Substantial evidence, this Court has said, is more than a mere scintilla.  It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotations omitted).

In making "substantial evidence" the relevant standard, the law preserves the judiciary's ability to review decisions by administrative agencies, but it does not grant courts the right to review the evidence de novo.  *Moruzzi v. Comm'r of*

11

*Soc. Sec.*, 759 F. App'x 396, 402 (6th Cir. 2018) ("The substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts.") (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009)).  An ALJ's factual findings are therefore subject to multi-tiered review, but those findings are conclusive unless the record lacks sufficient evidence to support them.  *Biestek*, 139 S. Ct. at 1154.

Although the substantial evidence standard is deferential, it is not trivial. The Court must " 'take into account whatever in the record fairly detracts from [the] weight' " of the Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion."  *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (internal quotations omitted).  Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right."  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (internal quotations omitted).

12

V.     Analysis

Imm presents two arguments in favor of summary judgment.  (ECF No.

10).  First, she contends that the ALJ's reasons for rejecting Dr. Rabquer's March

2019 disability letter are not supported by the record.  (*Id*., PageID.603).  The

Commissioner argues that Dr. Rabquer's letter was merely restating Imm's self-

assessment and thus does not qualify as a medical "opinion" as defined by the

applicable regulations.  (ECF No. 13, PageID.625-627) (citing 20 C.F.R. §

404.1520c).  The Commissioner argues further that even if the letter qualified as

an opinion, the ALJ's reasons for rejecting it were well supported by the record.

(*Id*., PageID.628-631).  In reply, Imm disputes that Dr. Rabquer's letter merely

regurgitated Imm's subjective claims of limitation.  (ECF No. 14, PageID.636).

Second, Imm argues that the RFC for unskilled, exertionally light work

crafted by the ALJ did not reflect her full degree of work-related limitation.  (ECF

No. 10, PageID.610).  In turn, the Commissioner argues that the ALJ's rationale

for finding that Dr. Rabquer's letter was not persuasive also supports the finding

that Imm could perform the range of light work set forth in the RFC.  (ECF No.

13, PageID.628).

A.     Dr. Rabquer's Letter

As discussed above, in March 2019, Dr. Rabquer composed a second of two

letters on behalf of Imm's disability claim, noting Imm's report of ear, jaw, and

13

tooth shooting pain due to trigeminal neuralgia and occipital neuralgia.  (ECF No.

8, PageID.580).[4]  Dr. Rabquer noted the medication side effects of

lightheadedness, dizziness, confusion, poor concentration, swelling, skin rash,

frequent infections, fatigue, weakness, sleep disturbance, anxiety, depression,

jerky movements, decreased coordination, difficulty word finding, and tremors.

(*Id.*).  She concluded that Imm "has not been able to work because of the

symptoms as she reported she would be off [task] 40-50 percent of the time.  This

is because she is easily distracted by her pain."  (*Id.*).

The ALJ found Dr. Rabquer's letter "not very persuasive."  (ECF No. 8,

PageID.57).  The ALJ noted that Dr. Rabquer "primarily restated" Imm's

subjective symptomology and complaints as to why she would be unable to work.

(*Id.*).  The ALJ cited treating records containing Imm's statement that " 'she'd like

to stay on her current [medication] regime' " and that medication for break

through pain helped " 'a little bit to take the edge off' " her more severe pain.

---

[4] As set forth above, in April 2018, Dr. Rabquer composed her first letter on behalf of Imm's application for benefits stating that by Imm's account, she would be off task 30-40 percent of the time due to the distractions of "pain, thoughts, and others."  (ECF No. 8, PageID. 429).  Imm concedes that while the ALJ did not cite the April 2018 letter, the ALJ's analysis of multiple opinions by one provider can be addressed "in a single analysis."  (ECF No. 8, PageID.604), n. 5 (citing 20 C.F.R. § 404.1520c).  The April 2018 and March 2019 statements are substantially similar except that in the first letter, Dr. Rabquer found that Imm would be off task "30-40" percent of the time but in the second, "40-50" percent. Because the ALJ addressed the opinion stating greater limitation, the Court finds no error in the ALJ's failure to discuss the earlier opinion.

14

(*Id.*, PageID.57, 497, 503).  The ALJ observed that Imm declined a recommendation for nerve block injections and that imaging studies showed that the migraine headaches were stable.  (*Id.*).

In analyzing the medical opinion evidence, ALJs assess both treating and non-treating medical evaluations based on how well they are supported by the remainder of the record.  20 C.F.R. § 404.1520c ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources").  The factors to be considered in evaluating medical opinions include: supportability and consistency with the record as a whole; relationship with the claimant; length of the treatment relationship; frequency of examinations; purpose and extent of the treating relationship; whether the source has examined the claimant; specialization; and any other factors that support or undermine the medical opinion. § 404.1520c(c). ALJs must articulate the "most important factors of supportability and consistency" of the medical opinions but "are not required to ... explain" the consideration given to the remaining factors.  § 404.1520c(b)(2).

As a threshold matter, the ALJ applied the above factors in rejecting the limitations set forth in Dr. Rabquer's March 2019 letter.  (ECF No. 8, PageID.57) (citing § 404.1520c).  Because the ALJ acknowledged that the letter constituted a medical opinion and provided an adequate rationale for finding it "not very

persuasive," the Court declines to consider Commissioner's argument that the letter did not constitute an actual opinion because it was based on wholly on Imm's subjective complaints. (*Id.*).[5]

The ALJ permissibly found that the March 2019 letter was not supported by or consistent with the record as a whole. She cited the treating records showing that Imm's symptoms were tolerable with the use of medication. (ECF No. 8, PageID.57). The ALJ noted that in October 2018, Imm reported that her symptoms were "manageable" with medication. (*Id.*, PageID.56, 489). This is consistent with Imm's August 2018 report that she was "managing better" with her current medication regime (*Id.*, PageID.497). While "manageable" is arguably a relative term, Imm's report of manageable symptoms is coupled with records showing that she also engaged in "moderate" exercise three to four times each week, demonstrated full muscle strength, and attended yoga classes. (*Id.*,

---

[5] The Commissioner notes that under the new regulations, diagnoses and symptoms are no longer considered medical opinions. 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5850 ("[W]e did not adopt the recommendation to retain 'symptoms, diagnosis, and prognosis' in the definition of 'medical opinions.' Diagnoses and prognoses do not describe how an individual functions. It is also not appropriate to categorize symptoms as medical opinions because they are subjective statements made by the individual, not by a medical source, about his or her condition."). Rather, medical opinions are now defined as "statement[s] from a medical source about what [the claimant] can still do despite [her] impairment(s) and whether [the claimant] [has] one or more impairment-related limitations or restrictions" in work-related activities. 20 C.F.R. § 404.1513(a)(2).

PageID.271, 334, 457, 491).  Accordingly, the ALJ did not err in concluding that

the manageable, e.g. tolerable symptoms (as well as tolerable medication side

effects as discussed below) stood at odds with Dr. Rabquer's statement that Imm

would be off task up to 50 percent of the workday.

The ALJ also noted that Dr. Rabquer's finding of disabling pain stood at

odds with June 2018 records showing that Imm was "not interested" in nerve

blocks to alleviate the head pain.  (*Id*., PageID.57, 502).  The records show that in

October 2018, Imm also declined to consider neurosurgical intervention.  (*Id*.,

PageID.490).  The ALJ did not err in concluding that Imm's refusal to consider

nerve blocks (much less surgery) to improve her condition undermines her claims

that the conditions were disabling.  *See Biestek v. Commissioner of Social Sec.*,

880 F.3d 778, 789 (6th Cir. 2017) (Claimant's allegations of limitation permissibly

discounted by her failure to seek aggressive treatment), *aff'd sub nom. Biestek,*

*supra*, 139 S. Ct. 1148.

Imm also faults the ALJ's reliance on an October 2018 imaging studies

showing that her conditions remained stable, arguing that relatively unremarkable

imaging studies did not reflect the severity of her symptoms.  However, the ALJ

did not base her rejection of Dr. Rabquer's letter solely on the imaging studies, but

also Imm's report of manageable symptoms and her refusal to consider more

aggressive treatment.  (*Id.*, PageID.56-57).  Finally, while Imm argues that Dr.

17

Rabquer's finding of debilitating medication side effects were glossed over, the treating records support the conclusion that the side effects did not preclude unskilled, non-assembly-line work.  While Imm was cautioned that she should not drive or operate machinery under the influence of certain medication, Imm testified that she continued to drive when not limited by pain.  (ECF No. 8, PageID.74).  Her treating records note that she was fully oriented and was described as "alert."  (*Id.*, PageID.91).  Although Dr. Rabquer's opinion provided a laundry list of medication side effects, the treating records do not bear out the conclusion that Imm experienced the side effects of skin rash, frequent infections, weakness, or psychological or cognitive limitations preventing unskilled, non-assembly line work on an ongoing basis.  (*Id.*, PageID.580).  To the contrary, November 2018 records from another treating source show that she denied headaches, depression, anxiety, or insomnia.  (*Id.*, PageID.457-458).

## B.     The RFC

Imm's second argument is that that the RFC did not reflect her full degree of limitation.  As will be explained, this argument is unavailing and does not warrant a remand.

In determining a claimant's RFC, it is necessary to consider (1) objective medical evidence as well as (2) subjective evidence of pain or disability.  20 C.F.R. §§ 404.1545(a)(1) (RFC must be based on all "relevant evidence").  The

"RFC is to be an 'assessment of [a claimant's] remaining capacity for work' once her limitations have been taken into account." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).  In crafting the RFC, the ALJ must consider the restrictions alleged by the claimant.  §§ 404.1545(b-d); 416.945; SSR 96-8p, 1996 WL 374184, at *6 (July 2, 1996).  "Although a function-by-function analysis is desirable, SSR 96–8p does not require ALJs to produce such a detailed statement in writing." *Delgado v. Comm'r of Soc.l Sec.*, 30 F. App'x 542, 547–548, 2002 WL 343402, at *5 (6th Cir. March 4, 2002) (internal citations omitted).  "[T]he ALJ need only articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record." *Id.*

Contrary to Imm's contention, the RFC crafted by the ALJ is well supported and explained.  As to the objective evidence, Imm's argument that the ALJ improperly relied on an MRI showing stable results; erroneously conflated "manageable" symptoms with non-disability; and did not provide an adequate explanation for rejecting Dr. Rabquer's opinion have been addressed and rejected in the previous section.

Regarding the subjective claims, Imm faults the ALJ for adopting a portion of her claims of limitation such as the need for non-production work and exertional and environmental limitations yet failing to credit the testimony that

19

she needed to spend most of her waking hours in bed.  (ECF No. 10, PageID.611).

Contrary to this argument, the ALJ acknowledged Imm's testimony of

"debilitating pain," but noted that Imm was able to shop on a regular basis, drive,

and attend to other activities of daily living.  (ECF No. 8, PageID.54-55).  The

ALJ did not err in further concluding that the treating records (showing full

muscle strength and the ability to exercise moderately) undermined Imm's more

extreme claims of physical limitation.  *See Stanley v. Sec'y of Health and Human*

*Servs.*, 39 F.3d 115, 118–119 (6th Cir. 1994) (ALJ not required to incorporate

unsupported claims in hypothetical question to VE or by extension, RFC).  Thus,

the RFC crafted by the ALJ was supported by substantial evidence.

### C.     In Sum

It bears repeating that while Imm alleges that she is disabled by her

conditions, she has declined to consider recommendations for either nerve blocks

or neurosurgical intervention.  As of November 2018 (by her own account) she

was able to engage in moderate exercise.  Because the ALJ's accord of only

partial credit to Imm's allegations is supported by the record and adequately

articulated, it is entitled to the deference of the reviewing court.  *See Cruse v.*

*Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (ALJs assessment of a

claimant's allegations entitled to "great weight").

The ALJ's conclusion that Dr. Rabquer's opinion regarding Imm's ability to work was not persuasive is supported by substantial evidence.  The same is true for the RFC.  Neither summary judgment in favor of Imm nor a remand for further factual development on either issue is required.

My recommendation to uphold the administrative findings should not be read to trivialize Imm's physical or situational concerns.  Nonetheless, because the ALJ's determination was within the "zone of choice" accorded to the fact-finder at the administrative hearing level, it should not be disturbed by this Court. *Blakley, supra,* 581 F.3d at 406.

## VI.    Conclusion

For the reasons set forth above, it is RECOMMENDED that the Commissioner's motion (ECF No. 13) be GRANTED and that Imm's motion (ECF No. 10) be DENIED.


Dated:                                          s/Kimberly G. Altman
Detroit, Michigan                          KIMBERLY G. ALTMAN
                                                     United States Magistrate Judge

## NOTICE TO PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation.  Any objections must be filed within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).

Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Under Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on December 29, 2021.


                                    s/Carolyn Ciesla
                                    CAROLYN CIESLA
                                    Case Manager